SMITH *v.* REFUNDING BOARD OF ARKANSAS.

4-4264

Opinion delivered February 3, 1936.

*Walter L. Pope* and *Leffel Gentry,* for appellant.
*Marvin B. Norfleet, amicus curiae.*

BUTLER, J. Appellant, as a citizen and taxpayer, in his own behalf, and in behalf of all citizens and taxpayers of the State of Arkansas, by this action sought to restrain the Refunding Board of the State of Arkansas from allowing certain claims presented to it under the provisions of act No. 11 of the Extraordinary Session of the General Assembly in 1934, and to restrain other agents of the State from issuing any vouchers and warrants for said claims and from paying any warrant representing them. The claims were presented to the Refunding Board by the firm of Hill & Evans, contractors. Two of the claims were for anticipated profits which would have been earned, it was said, on highway con-

struction jobs, Nos. 6,112 and 11,049. The contracts for these jobs were made and entered into between the Highway Commission, and the contractors in accordance with the provisions of the statutes. Work was being performed on these jobs pursuant to the contracts, but was discontinued by the Highway Commission because of lack of funds with which to pay for the work, and a voucher was issued and delivered to the contractors for the amount of work performed.

The third claim presented arose under an illegal agreement entered into between the Commission and the contractors for the performance of job No. 11,029. The work on this job was completed and warrants for all the work performed according to the terms of the agreement were issued to the contractors which were all paid except one in the sum of $9,117.09. The contractors filed a claim on this job for the sum of $70,311.98 which, except for that represented by the unpaid warrant, was the amount alleged to be due over the sums received for the work performed on a *quantum meruit* basis.

The trial court sustained a demurrer to the appellant's petition, and, the petitioner electing to stand on his petition, the same was dismissed. From these orders of the court below, this appeal is prosecuted.

It is conceded by appellant that under the decision in the case of *Refunding Board of Arkansas* v. *National Refining Co.*, 191 Ark. 1080, 89 S. W. (2d) 917, the Refunding Board is an executive agency of the State, and under the provisions of the act its duties are executive in character involving the exercise of discretion. It is further conceded that the action of the board, when dealing with those matters within the scope of its jurisdiction conferred by the terms of the act, is not subject to control by the courts. It is insisted, however, that to act on the claims here involved would be beyond the scope of the board's authority, and that the courts may intervene to enjoin the unauthorized action of the board. The authority of the courts in this regard is not questioned by appellee. The controversy arises over the interpretation of those provisions of the act which authorize the board to examine into and allow claims presented to it. The

provisions of the statute thought by the appellee to be applicable are: (1) that part of § 1 which invests the board with "all the powers necessary to carry out the provisions of this act;" (2) that part of § 9 which provides that the holders of certain short term notes, State bonds and "the legal holders of all valid claims against the Highway Commission growing out of contracts for the construction and maintenance of highways shall be entitled upon presentation to the Refunding Board of such short term notes, State bonds or other evidences of said claims, to receive in exchange therefor funding notes of the character hereinafter provided for in this section in an amount equal to so much of the face value of such short term notes, State warrants or claims presented, payment of which is not otherwise provided for by this act;" (3) also, the provision of § 10, as follows: "This act shall not validate any claim, voucher, warrant or other evidence of indebtedness issued under or pursuant to any illegal contracts; no payments thereon or notes or bonds therefor shall be issued until such claim, voucher, or warrant is approved by the Refunding Board or until its validity is finally determined by the Highway Audit Commission or by a court of competent jurisdiction. * * *"; (4) also, that part of § 39 which, after providing for the application of the balance remaining to the credit of the Bond Refunding Fund at the close of business on December 31, 1933, to certain purposes, provides: "The remainder shall be used for the *pro rata* payment of construction warrants and vouchers issued by the Highway Commission remaining unpaid on February 1, 1933, and also short term notes, issued under act No. 15 of the General Assembly, approved April 14, 1932, and all State bonds issued under act No. 167 of the General Assembly, approved March 28, 1933, and short term notes issued under act No. 18 of the General Assembly, approved September 2, 1933, where such short term notes or State bonds were originally issued in payment of a construction warrant, voucher or claim against the Highway Commission, and of claims in favor of contractors for maintenance or construction of highways when such claims are valid claims or compromised or a judg-

ment rendered on same by a court of competent jurisdiction; provided, that not more than 50 per cent. of such construction warrants, vouchers, short term notes and claims including compromise and court judgments shall be paid in this manner." (5) The remaining part of the statute thought to be applicable, and to sustain the contention made by the appellee, and upheld by the court below is § 50, which, after appropriating certain amounts out of the Bond Refunding Fund as it existed at the close of the year of 1933, for certain named purposes, provides in subdivision (d) as follows: "For the purpose of paying *pro rata* the construction warrants and vouchers remaining unpaid on February 1, 1933, issued by the Highway Commission and also short term notes issued under act No. 15 of the General Assembly, approved April 14, 1932, and all State bonds issued under act No. 167 of the General Assembly, approved March 28, 1933, and the short term notes issued under act No. 18 of the General Assembly, approved September 2, 1933, where such short term notes or State bonds were originally issued in payment of a claim against the Highway Commission under the terms of any contract for the construction or maintenance of highways or issued in payment of any valid claim, compromise or court decree and claims in favor of contractors for maintenance and construction of highways, the sum of one million ($1,000,000) dollars or so much thereof as may be necessary to pay fifty (50) per cent. of said warrants, vouchers, short term notes, State bonds and claims."

It is insisted by counsel as *amicus curiae,* in his exhaustive and able brief, that, when the statute is examined in its entirety, authority is found for the Refunding Board to consider and pass upon claims of the nature here involved. As sustaining this contention, counsel places particular emphasis upon the phrase, "the legal holders of all valid claims against the Highway Commission 'growing out of contracts' for the construction and maintenance of highways, shall be entitled upon presentation to the Refunding Board * * * of said claims, to receive in exchange therefor, funding notes * * * equal to so much of the face value of such * * * claims pre-

sented, payment of which is not otherwise provided by this act," in § 9; and upon that part of § 39 which provides for the payment "of claims in favor of contractors for maintenance or construction of highways when such claims are valid claims or compromised or a judgment rendered on same by a court of competent jurisdiction;" and the appropriation contained in § 50 for "payment of a claim against the Highway Commission under the terms of any contract for the construction or maintenance of highways, or issued in payment of any valid claim, * * * and claims in favor of contractors for maintenance and construction of highways;" and in the following language in § 10: "This act shall not validate any claim * * * under * * * any illegal contracts; no payments thereon or notes * * * therefor shall be issued until such claim * * * is approved by the Refunding Board * * *."

It is argued that since loss of anticipated profits is such a demand as may be asserted in the courts, anticipated profits therefore is a valid claim within the provision of § 9. It is also argued that § 10 makes provision for claims on a *quantum meruit* basis for work performed under invalid contracts.

The Bond Refunding Board is a special tribunal, clothed with limited powers and can have none except where same are expressly, or by necessary implication, granted under the provisions of the act of its creation. The investure in the board of all the powers necessary to carry out the provisions of the act cannot serve to extend its jurisdiction and was not so intended. The general power given by § 1 related to only those matters over which the board was given jurisdiction by the provisions of the act. With reference to the allowance and refunding of the obligations of the Highway Commission, the act specified the obligations which might be considered and passed upon by the board. These are warrants and vouchers issued by the commission, short term notes issued under act No. 15 of 1932, State bonds issued under act No. 167 of 1933, short term notes issued under act 18 of 1933, and claims for maintenance and construction of highways. The claim of Hill & Evans on job No. 6112

and job No. 11,049, except the warrant for work performed on the first contract in the sum of $1,022.47 and the warrant for work done on the second contract in the sum of $1,998.79, is not for the maintenance and construction of highways, but for damages in loss of profits sustained by reason of the State breaching its contracts. To concede appellee's contention would extend the provisions of the statute and authorize the board to allow and refund claims of the character not within the legislative intent as gathered from the language employed.

Section 10, relied on to support the claim based on a *quantum meruit* on job No. 11,029, does not refer to claims of that character, but to any ''voucher, warrant or other evidence of indebtedness issued under, or pursuant to, any illegal contract.'' Since there has been no voucher, warrant, or other evidence of indebtedness issued under contract No. 11,029, for work performed on a *quantum meruit* this section has no application and does not tend to support the contention of the appellee.

Certain warrants were issued to appellee indorsed to the effect that the voucher was given and accepted in full and complete settlement for work done and for all claims of any character arising out of, or incident to, the construction. The effect of this indorsement is a matter of dispute between the appellant and the appellees, but this we need not consider as it is our conclusion that the proceeding of the Bond Refunding Board was beyond the authority conferred by the statute and the trial court erred in sustaining the demurrer to the petition of appellant. The decree is therefore reversed, and the cause remanded with directions to overrule the demurrer, and for further proceedings in accordance with this opinion.